UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE CREAL, KASANDRA MURPHY, and FELICIA WRIGHT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 13 C 4275 |
| GROUP O, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Plaintiffs Michelle Creal, Kasandra Murphy, and Felicia Wright (collectively, "Plaintiffs") filed this three-count action in June 2013 against Defendant Group O, Inc. ("Group O") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I) and similar Illinois wage laws (Counts II and III). Plaintiffs challenge Group O's "practice of rounding employees' swipe-in and swipe out times" and seek overtime pay for work allegedly performed before and after their shifts and during unpaid meal periods. Dkt. 1, ¶ 7. After conditionally certifying Plaintiffs' FLSA claim in May 2014 (Dkt. 48), the Court granted Group O's Motion to Decertify that collective in January 2016 (Dkt. 130). Now before the Court are Group O's Motion for Summary Judgment (Dkt. 132) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. 135). For the following reasons, Group O's motion is granted as to Felicia Wright and otherwise denied; and Plaintiffs' motion is denied.

## BACKGROUND

The bases for Plaintiffs' claims are set out more fully in the Court's January 2016 Opinion decertifying their putative FLSA collective, with which familiarity is assumed. *See* Dkt. 130. In sum, Plaintiffs contend that, beginning in February 2011, Group O's timekeeping system (the "Kronos" system) "was programmed to automatically round an employee's clock-in times to the employee's scheduled start time when the employee punched in less than fifteen (15) minutes prior to his or her scheduled start time," and "was also programmed to automatically round an employee's clock-out times to the employee's scheduled shift end time when the employee punched out less than fifteen (15) minutes after his or her scheduled end time." Dkt. 146, ¶¶ 16-18. Group O does not dispute that its Kronos system operated in this fashion, for regular shifts and overtime shifts, "unless the employee was authorized to work overtime." *See id*. ¶¶ 16-18. Rather, the parties dispute whether any pre-shift or post-shift time rounded off was spent working, whether Plaintiffs performed any work during their unpaid meal breaks, and whether Group O was aware of any unpaid pre-shift, post-shift, or mealtime work. *Id*. at ¶¶ 12, 17, 24, 28.

Both sides now move for summary judgment. Plaintiffs seek partial summary judgment in their favor on the issues of whether Group O's Kronos timekeeping system was "facially defective and resulted in underpayment of wages to employees," in violation of the FLSA and analogous provisions of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. Dkt. 135, ¶¶ 1-2. Plaintiffs also seek "a judgment finding that Defendant violated various provisions of the FLSA and

analogous provisions of the IMWL by failing to maintain accurate records of hours worked by employees and ensuring that employees were able to take meal periods during full shifts." *Id*. at ¶ 3. Defendants, on the other hand, move for summary judgment in their favor on all claims, contending that Plaintiffs lack sufficient evidence "to prove that they in fact performed any work for which they were not compensated," or "that Group O had 'actual or constructive knowledge' that they worked without pay." Dkt. 132, ¶¶ 8-9. Group O also contends that one Plaintiff (Ms. Wright) "completely disavowed all allegations in the complaint, testifying that she had no claims for unpaid wages or overtime pre or post shift or during meals." Dkt. 133, at 14. According to Group O, "Wright's sole complaint is that she should have been paid a dollar more per hour than she was paid, a claim not pled and preventing her from proceeding further." *Id*.

## DISCUSSION

### I. Plaintiffs' Motion for Summary Judgment

#### A. Claim that Group O's Rounding Policy is "Facially Defective"

Plaintiffs first seek summary judgment regarding Group O's practice of "rounding" employee swipe-in and swipe-out times. As explained above, it is undisputed that the challenged Kronos timekeeping system rounded an employee's start time up to his/her scheduled shift start time when the employee clocked in less than fifteen minutes before her shift, and rounded the employee's end time back to her scheduled shift end time when the employee clocked out less than fifteen minutes after her shift. Dkt. 146, ¶¶ 16-18. Plaintiffs cite the U.S. Department of Labor's

regulation regarding time clock rounding to argue that Group O's rounding practice is "facially defective."

> "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). Pointing to this regulation's language indicating that such a rounding practice presumably "averages out so that the employees are fully compensated for all the time they actually work," Plaintiffs contend that Group O's rounding practice is "facially defective" because it "only rounded in a direction that benefited Defendant," (Dkt. 148, at 8), and thus "nearly always benefited Group O to the detriment of employees." Dkt. 136, at 4-5. Plaintiffs therefore seek summary judgment holding that Group O violated the FLSA and IMWL "by engaging in regular and systematic time clock rounding practices in violation of those laws, and by establishing a wage payment policy that was facially defective and resulted in underpayment of wages to employees." Dkt. 135, ¶ 2.

Group O counters that its "pay to shift" policy "was already found lawful by this Court"—a ruling which Group O says is now "the law of the case" and which "Plaintiffs stubbornly ignore." Dkt. 145, at 3. Group O also argues that "the law does not proscribe rounding of non-work time," and that its rounding policy "does not

round work time," since Group O "prohibits employees from working prior to or after that scheduled shift unless working authorized overtime." *Id.* at 3-5. Group O also points to deposition testimony explaining that an employee who works unauthorized overtime "is still paid" for the unauthorized overtime worked, and that employees who work outside of their shift without approval are similarly "paid but disciplined." Dkt. 146, Response to ¶ 7.

As an initial matter, Group O's assertion that the Court "already found" its rounding practice to be "lawful" is incorrect. The Court's January 2016 Opinion merely observed that "a rounding practice will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." Dkt. 130, at 10 (quoting 29 C.F.R. § 785.48(b)). Thus, while the Court agreed with Group O in principle that "the law does not proscribe the rounding of non-work time," it did not pass on the lawfulness of Group O's rounding practice. Rather, the Court held that a rounding policy is "insufficient by 'itself' to retain certification of an FLSA collective," because the pivotal inquiry for FLSA liability is whether the rounding policy "was applied in such a manner that it actually resulted in unpaid work." *Id.* (quoting *Kelly v. Healthcare Servs. Group, Inc.*, No. 2:13-cv-00441-JRG, 2015 WL 3464131, at *5 (E.D. Tex. June 1, 2015). And in this case, because that "factual inquiry" was so "individualized" that "there is no efficiency gained by trying all the factual questions and defenses in one trial," the Court concluded that decertification of Plaintiffs' putative FLSA collective was required. *Id.*

Nor did the Court find that Group O's policies prohibiting unapproved overtime "were followed and enforced" without exception, as Group O now suggests. *See* Dkt. 133, at 13. While the Court found no collective-wide policy requiring Group O employees "to clock in early or clock out late," and noted Group O's policies prohibiting unauthorized overtime (Dkt. 130, at 12-13), at no point did the Court find that Group O's prohibition of unapproved overtime was "enforced" so universally as to preclude every claim for unpaid overtime. To the contrary, the Court recognized that some "Plaintiffs do claim to have worked before or after their shifts without compensation," but agreed with Group O that "they did so under 'unique circumstances' depending upon their position, responsibilities, supervisor, and other factors," so as to "require a separate determination of whether the employee was performing tasks that are compensable," and/or subject to "any affirmative defenses raised by Group O." *Id*. at 13. The Court therefore decertified Plaintiffs' putative collective, but did not pass on the merits of any plaintiff's overtime claim.

Nevertheless, the Court disagrees that the current Plaintiffs (Creal, Murphy, and Wright) are "entitled to judgment as a matter of law as to their claims relating to time clock rounding." Dkt. 136, at 1. Plaintiffs argue that summary judgment is required on their rounding claim because a policy that "always rounds up to the scheduled start time, regardless of when an employee logs in," is "facially defective as a matter of law" under 29 C.F.R. § 785.48(b). *Id*. at 3-4. But as Plaintiffs acknowledge, "an employer's rounding policies or practices violate § 785.48(b) if said policies systematically undercompensate employees." *Id*. Here, Group O argues,

"work time is not rounded – only pre and post-shift non-work time," since "Group O's policies prohibited pre and post-shift work without approved overtime." Dkt. 145, at 4, 9. There is no dispute, moreover, that Group O's policies stated that employees "were prohibited from working before or after their scheduled shifts unless they received approval to work overtime," and under those policies, "hourly employees were not permitted to work past the end of their scheduled shifts without approval or knowledge of their supervisor and were not permitted to start working prior to the beginning of their scheduled shift without knowledge or approval of their supervisor." Dkt. 151, ¶¶ 3, 11. It is also undisputed that Group O employees "were paid for unauthorized overtime," that its employee manual "advised employees to report paycheck errors," and that "Plaintiffs knew to discuss any questions or discrepancies between hours worked and hours paid with their supervisors or managers." Dkt. 149, ¶¶ 11, 19, 28; Dkt. 152, ¶ 5. Given these measures, even if Group O's policy "only rounded in a direction that benefited Defendant" (Dkt. 148, at 8), the Court cannot conclude "as a matter of law" that it "systematically" undercompensated employees.[1] Indeed, even Plaintiffs concede that "[t]here is certainly a genuine issue of material fact as to whether such a policy necessarily favored underpayment of employees' wages, in violation of § 785.43(b)." Dkt. 148, at 8.

---

[1] The record is unclear as to whether Group O "always rounded down" (Dkt. 136, at 7), or simply narrowed the window for rounding up or back to the employee's schedule start or end time from 30 minutes to 15 minutes "after Group O observed that early and late punches had declined." *See* Dkt. 149, ¶¶ 17-18. But in either case, there are disputed issues of material fact as to whether Group O's rounding practice, especially in combination with its other policies of prohibiting but compensating unauthorized overtime, "systematically" undercompensated employees.

Plaintiffs' cited authorities are inapposite for the same reason. Citing district court decisions "in other circuits," Plaintiffs argue that "an employer's practice of indiscriminately rounding down employee hours constituted a violation of the wage and record-keeping principles of the FLSA." Dkt. 136, at 2-3. But a closer read reveals that the plaintiffs in these cases either adduced undisputed evidence of unpaid work, or were required to do so in order to recover.[2] Here, by contrast, the parties vigorously dispute whether, despite Group O's undisputed practice of paying for unauthorized overtime (Dkt. 152, ¶ 5), and its undisputed payment to Plaintiffs of "substantial overtime" in the time period at issue (over 158 hours to Murphy and over 1,000 hours to Creal, *id.* at ¶¶ 7, 14-15), Group O still failed to pay Plaintiffs all of the overtime they worked. *See*, *e.g.*, Dkt. 149, ¶¶ 15, 39, 42-43, 52. On this record, Plaintiffs' request for summary judgment that Group O violated the FLSA and IMWL through "underpayment of wages" (Dkt. 135, ¶ 2) must be denied.

---

[2] *See Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2013 WL 3580309, at *14 (S.D. Ohio July 11, 2013) (to recover, "Plaintiffs must still present evidence that they clocked in and engaged in principal activities before their scheduled start time, but were not compensated."); *Eyles v. Uline, Inc.*, No. 4:08-CV-577-A, 2009 WL 2868447, at *2 (N.D. Tex. Sept. 4, 2009) ("The DOL concluded that defendant's rounding practice violated the FLSA," and "Defendant agreed to pay the amount of back pay . . . including $71.67 the DOL concluded was owed to plaintiff."); *Chao v. Self Pride, Inc.*, No. Civ. RDB 03-3409, 2005 WL 1400740, at *2-3 (D. Md. June 14, 2005) (employees "were required to record the number of hours which they worked on a daily basis on a time sheet," "the record contains examples of instances when Self Pride rounded the hours recorded by the employees down to the nearest hour," and "there has been no evidence offered [by] the Defendants to remotely raise any issues of material fact"); *Austin v. Amazon.Com, Inc.*, No. C09-1679JLR, 2010 WL 1875811, at *3 (W.D. Wash. May 10, 2010) (denying motion to dismiss rounding claim where "sufficient factual content" was alleged, but reserving issue of "whether the putative class is sufficiently similar to support a collective action").

## B. Claim that Group O Failed to Maintain Accurate Time Records

The second prong of Plaintiffs' motion alleges Group O's failure "to maintain accurate time records," (Dkt. 135, ¶ 3), but merely recasts Plaintiffs' allegation of overtime worked during unpaid meal periods as a purported record-keeping violation. Plaintiffs contend that they "are entitled to summary judgment on the issue of missed meal periods, as it is undisputed that Defendant maintained a standard policy and practice with respect to employee's 30-minute meal periods by requiring employees to frequently work during this unpaid time in violation of the FLSA." Dkt. 136, at 10. In short, Plaintiffs' assertion that these facts are "undisputed" is staggering.

Not only does Group O dispute that it had any policy or practice "requiring employees to frequently work during this unpaid time," it asserts a policy to the opposite effect—*i.e.*, that "Group O policy required employees to take a full 30-minute meal period and not perform any work." Dkt. 149, ¶ 9. "Plaintiffs admit that said policy is set forth in Defendant's Employee Handbook," but deny that the policy "was effective or enforced by Defendant's supervisory or managerial employees, such that said policy was illusory." *Id.* Group O also disputes that it had "actual or constructive knowledge" of any work during unpaid meal periods, Dkt. 145, at 2, a fact which plaintiffs contest, but acknowledge is required for liability. Dkt. 136, at 11; Dkt. 148, at 14. And the parties also dispute whether Plaintiffs and other employees were required to work during meal periods, or actually did so without compensation. Dkt. 146, ¶ 28. The facts central to Plaintiffs' meal-time claims are thus plainly disputed, precluding summary judgment on the issue.

Plaintiffs' attempt to recast their meal-time summary judgment motion as one seeking a ruling that Group O failed "to maintain accurate records of hours worked" (Dkt. 135, ¶ 3) does not alter this analysis. Mere assertions of inaccurate time records are insufficient. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010). "The employee bears the burden of proving she performed overtime work for which she was not properly compensated." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2010). The accuracy of Group O's time records is thus disputed, if only because the issue of whether Plaintiffs performed any work for which they were not properly compensated is itself disputed.

As Group O correctly argues, moreover, even if Plaintiffs could establish that Group O's time records were inaccurate, "it would not entitle them to summary judgment − only the just and reasonable inference standard." Dkt. 145, at 2-3. That standard requires "sufficient evidence to show the amount and extent of [unpaid] work as a matter of just and reasonable inference," *Turner*, 595 F.3d at 691 (brackets and citation omitted), all of which is hotly disputed here. Nor would such evidence require summary judgment in Plaintiffs' favor, given the parties' other disputes regarding whether Group O's policy prohibiting mealtime work was "illusory," and relatedly, whether Group O had any knowledge of any uncompensated mealtime work, since it may not have "had reason to know" that Plaintiffs were "acting in direct contradiction of a company policy and practice." *Kellar*, 664 F.3d at 178. Summary judgment on Plaintiffs' meal-time claims is therefore precluded regardless of whether it attacks the accuracy of Group O's time records, or seeks the overtime pay itself.

## II. Group O's Motion for Summary Judgment

### A. Claims by Ms. Creal and Ms. Murphy

Group O's motion for summary judgment as to the claims asserted by Ms. Murphy and Ms. Creal is a mirror image of Plaintiffs' summary judgment motion discussed above, and is thus encumbered by the same factual disputes that preclude summary judgment in Plaintiffs' favor. And like Plaintiffs' motion, Group O's attempt to recast those disputed issues as legal questions is similarly unavailing.

Group O first argues that "[m]uch, if not all, of Murphy and Creal's claims are based on their incorrect belief that they are entitled to be paid for non-work time while clocked in before and after their shifts." Dkt. 133, at 7. Plaintiffs say this "misstates" their claims, because they "do not claim that they should be paid for time spent not working," but rather that Group O's timekeeping system "illegally rounded" the hours they worked. Dkt. 148, at 9. In like fashion, Group O also contends that "Plaintiffs have presented no evidence to suggest that Group O's time records do not accurately show their time worked, admitting that they have no basis to refute the accuracy of the Kronos records." Dkt. 133, at 8. But this too misstates Murphy's and Creal's claims. Both Plaintiffs plainly dispute that Group O's rounding policy accurately captured all of their pre- and post-shift work time, pointing to evidence (which Defendants, in turn, challenge) indicating that they were required to come in early and/or stay late, required to perform work during that time, that some Group O personnel knew about it, and that Group O rounded off at least some of that time. *See*, *e.g.*, Dkt. 148, 9-12; Dkt. 137, ¶¶ 11-12, 24-25; Dkt. 149, ¶¶ 14-15, 36, 39, 41-42, 70.

Group O next points to its policies prohibiting pre- and post-shift work and during meal periods to clinch its asserted ignorance of any unpaid overtime. Dkt. 133, at 13. As explained above, however, while an employer may have reason to believe that its policies were being followed in the absence of employee complaints to the contrary, *Kellar*, 664 F.3d at 178, this Court cannot conclude on summary judgment, drawing all reasonable inferences in Plaintiffs' favor, that Group O's policies were enforced so universally as to preclude every overtime claim. Here, Murphy and Creal contend that Group O's policy against unapproved overtime was trumped by requirements for them to start early or stay late, and Creal claims that, at least in her case, Group O's policy against mealtime work was not "enforced by Defendant's supervisory or managerial employees." *See*, *e.g.*, Dkt. 149, ¶¶ 9-15, 36-39, 41-49, 70. Although there is ample evidence to dispute these contentions, a factfinder must determine whether Murphy or Creal worked any overtime without pay.

Finally, Group O argues that summary judgment is nevertheless required on Murphy and Creal's overtime claims, because they lack "sufficient evidence to show the amount and extent of that work." Dkt. 133, at 10 (internal quotations omitted). But Group O concedes that damages "can 'be reconstructed from memory, inferred from the particulars of the jobs or estimated in other ways.'" *Id*. (ellipses omitted, quoting *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013)). So, if Group O's time records are shown to be inaccurate, "any method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked would suffice." *Espenscheid*, 705 F.3d at 775.

Still, while the "just and reasonable inference" standard is open to "any method" of proof, the Court questions whether Murphy and Creal are able to meet that standard to any meaningful degree. Most troubling are Murphy's concessions that she "does not remember what overtime she worked that she was not paid for," and "has no documentation or other evidence showing which hours she claims to have worked but for which she claims she was not paid" (Dkt. 149, ¶ 64, 66), and Creal's concessions that she "does not know how many hours of work she performed for which she has not been compensated, does not know the most amount of time she was shorted in a week, and is unable to calculate her damages and has no records, documents or paperwork of the time that she believes she was not compensated." *Id*. at ¶ 68. Consistent with these concessions, Murphy and Creal offer only a list showing Group O's rounding of their swipe-in and swipe-out times and those of other employees (*see* Dkt. 37, at Exhibits M-P), but no detail demonstrating whether that time was spent working, as opposed to eating, socializing, or some other activity. Instead, Murphy and Creal supply a two-page chart listing roughly 5.5 hours of "unpaid minutes," which they call a "sampling." *See* Dkt. 137-2, at Exhibit H.

The evidence as to meal-time related damages is similarly superficial. Murphy admits she has no meal-time claims at all (Dkt. 149, ¶¶ 24, 45), and Creal "does not know how many times she worked during part or all of her unpaid lunch breaks," but estimates that "her lunches were interrupted 'nine times out of 10.'" *Id*. at ¶ 67. Such undocumented guesstimates, absent any corroboration, raise serious questions regarding whether Creal could prove any substantial meal-time claims at trial.

Thus, in sum, drawing all reasonable inferences in their favor as required on summary judgment, the Court cannot say at this juncture that Murphy and Creal are unable to prove *any* overtime damages under the "just and reasonable inference" standard. But legitimate concerns are raised regarding the extent of any provable damages in relation to the substantial cost of a trial, and the utility of such a proceeding, particularly if the same plaintiffs continue to pursue the same damages in a state court class action. *See* First Amended Complaint in *Murphy v. Group O, Inc.*, No. 2012L000138 (Cir. Ct. Will Cnty. filed Feb. 21, 2012), Dkt. 140, at Exhibit 14. Accordingly, the Court will conduct a pretrial conference in the coming weeks, at which the parties will be expected to discuss *in detail* their intentions regarding a trial, the amount of damages to be sought at such a trial, the bases therefor, and the status of Plaintiffs' claims in Will County Case No. 2012L000138.

### B. Claims by Ms. Wright

Finally, the Court turns to Group O's motion for summary judgment as to Ms. Wright's overtime claims, which raise similar (but in her case, insurmountable) concerns. Group O argues that "Wright completely disavowed all allegations in the complaint, testifying that she had no claims for unpaid wages or overtime pre or post-shift or during meals." Dkt. 133, at 14. Group O maintains that "Wright's sole complaint is that she should have been paid a dollar more per hour than she was paid, a claim not pled and preventing her from proceeding further." *Id*. Wright retorts that her deposition admitted only that she did not know if she "was compensated for the time that [she] clocked in or if they just paid us from the time that we were assigned to

be at work." Dkt. 148, at 15-16. Wright says this testimony "is confusing and dispositive of nothing, except perhaps to show that Wright lacked a thorough understanding of Defendant's timekeeping and wage payment policies." *Id*.

In fact, while some portions of Wright's deposition may be clearer than others, it nonetheless demonstrates her repudiation of any claims for overtime before or after her shift or during meal periods. *See* Dkt. 142, at Ex. 44, at 102 ("Q. You don't have any complaint with regard to whether you were inaccurately compensated during your lunch period or things like that, correct? A. Correct."), 129 ("Q. And other than being paid at a rate that you felt wasn't correct, do you have any other complaints regarding the manner you were compensated for your overtime? A. No. Q. So when you did work overtime as a clerk on the second shift, you were compensated at time and a half, you were paid and the only complaint that you have is that that should have been time and a half based on $11 rather than $10, correct? . . . A. Yes."). And, contrary to Wright's assertions, these admissions are unmitigated by her one-word confirmation that she reviewed the complaint filed in the Will County matter, "containing allegations similar to the instant case," to determine "that it was true and accurate." *See id*. at 58; Dkt. 148, at 16. But in any case, the problem is not merely that Wright's deposition testimony conceded her claims in this case. As explained above, Wright "bears the burden of proving she performed overtime work for which she was not properly compensated." *Kellar*, 664 F.3d at 173. And, given her absolute failure to provide any support for her overtime claims here, any such claim that she might still press in this case "is flimsy in the extreme." *Turner*, 595 F.3d at 691.

Indeed, Wright tacitly admits the collapse of her overtime claims, opting instead "to assert her IWPCA claim" based on "deposition testimony that Defendant failed to pay her wages 'pursuant to an employment contract or agreement.'" Dkt. 148, at 16 (quoting 820 ILCS 115/2). But Wright neither alleged such an agreement in the complaint nor substantiated one at her deposition. On the contrary, Wright concedes that she merely believed she should have been paid $1 more per hour because that was the rate she thought clerks received, but was told by her supervisor that she was instead classified as a forklift operator, which received a lower rate. Dkt. 149, ¶¶ 78-80. Other than that conversation with her supervisor, which produced no rate increase, Wright "never complained," "never said anything," and "never had any other conversation about her rate of pay." *Id*. This evidence falls far short of the agreement necessary to pursue an IWPCA claim. *See Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016) (dismissing IWCPA claim that sought "to graft new terms into an employment contract without employer's consent").

## CONCLUSION

For the foregoing reasons, Defendant Group O's Motion for Summary Judgment (Dkt. 132) is granted solely as to Felicia Wright and otherwise denied; Plaintiffs' Motion for Partial Summary Judgment (Dkt. 135) is denied; and this matter is set for a pretrial conference on June 30, 2016, at 10:30 a.m.

_____

Dated: June 8, 2016  Charles P. Kocoras
United States District Judge